**STOLT TANK CONTAINERS, INC., Plaintiff–Appellant,**

**v.**

**EVERGREEN MARINE CORPORATION, Defendant–Appellee,**

**Evergreen Marine Corporation (Taiwan), Ltd., Defendant–Third–Party– Plaintiff–Appellee,**

**Monsanto International Sales Co., Inc., Third–Party–Defendant.**

**No. 696, Docket 91–7790.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1992.

Decided May 8, 1992.

Chester D. Hooper, New York City (A. Andrew Tsukamoto, Haight, Gardner, Poor & Havens, of counsel), for appellant.

Joseph DeMay, Jr., New York City (Paul M. Keane, Deborah R. Reid, Wei–Nuoo Lin, Cichanowicz Callan & Keane, of counsel), for appellee.

Before: OAKES, Chief Judge, MESKILL and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiff-appellant Stolt Tank Containers, Inc. (Stolt) appeals from an order of the United States District Court for the Southern District of New York, Patterson, *J.*, granting partial summary judgment in favor of the defendants-appellees Evergreen Marine Corporation and Evergreen Marine (Taiwan) Corporation (collectively "Ever-

green"). Stolt entrusted five of its containers to Monsanto International Sales Co., Inc. (Monsanto), which shipped them via Evergreen's vessels. The bills of lading issued to Monsanto by Evergreen contained $500 per package liability limitations. Stolt's containers allegedly were damaged in transport. Stolt brought suit in the Southern District of New York, invoking maritime jurisdiction under 28 U.S.C. § 1333(1). Evergreen impleaded Monsanto as a third-party defendant.

Analyzing Stolt's claim, the district court examined both the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. app. § 1300 *et seq.*, and the liability limitations contained in the bills of lading. Emphasizing that Stolt had been aware of the liability limitations, the district court granted partial summary judgment in Evergreen's favor. After Judge Patterson granted partial summary judgment, the parties entered into a stipulation that removed from this case all issues except whether the liability limitations applied to Stolt. The parties agreed on a remedy as well, allowing for no damages if we affirm and damages in the amount of $2,500 if we reverse the district court. Judge Patterson entered the stipulation as an order. Therefore, even though this appeal is from the granting of partial summary judgment, resolution of the package limitation issue should conclude the litigation of this case.

Stolt filed a timely appeal, arguing principally (1) that a bill of lading to which it was not a party could not serve as the basis for applying COGSA, and (2) that COGSA did not limit its liability to collect damages for harm to its containers.

## BACKGROUND

Monsanto obtained five twenty foot long, insulated stainless steel containers from Stolt for use in shipping chemicals overseas. With Stolt's authorization and knowledge, Monsanto then contracted with Evergreen for carriage of the containers and their contents from St. Louis, Missouri to Hakata, Japan. Two ships carried the five containers.

Stolt alleges that all of the containers arrived in Japan in a damaged condition, and that the containers were undamaged when Evergreen received them. Stolt advances two theories of liability: (1) breach of a shipper/carrier bailment between Stolt as bailor and Evergreen as sub-bailee, and (2) negligence by Evergreen.

Evergreen had issued Monsanto three identical, preprinted bills of lading, none of which makes any reference to Stolt. Evergreen argues that any damages due Stolt are limited by the $500 per package liability caps imposed by COGSA and the bills of lading governing the shipments. These defenses rely on language that appears on the reverse side of the Evergreen bills of lading and in COGSA.

The bills of lading in this case contain great detail and evince Evergreen's clear intent to limit liability to $500 per container. In Clause 1, the bills of lading set forth definitions for terms used. Significantly, the bills defined "goods" to mean "the cargo accepted from the Merchant and includes any Container whether supplied by or on behalf of the Carrier or by the Merchant."

Clause 2 specifically incorporated Evergreen's tariff and provided notice that it was willing to supply copies of the tariff on request. Evergreen's Tariff Rule No. 52, thus incorporated, states that "[e]ach tank container and its contents shall be transported by the carrier as a single package and carrier liability is limited to $500.00 per container and its contents." Moreover, Clause 5(a) and Clause 7(2) make clear that COGSA applies. COGSA limits carrier and ship liability to $500 per package unless the shipper has declared a higher value:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C. app. § 1304(5). Finally, Clause 9 of the bills of lading provided that the "limits of liability ... apply in any action

against the Carrier for loss or damage to the Goods whether the action be founded in contract or in tort."

Stolt argued before the district court that limitations of damages in the bills of lading and COGSA do not apply to it. It argued that a contract to which it was not a party could not bind it and that COGSA, by its own terms, was inapplicable. Stolt pursued this argument despite its having known that the five containers were to be shipped by sea from a United States port to Japan aboard Evergreen vessels. Stolt thus had constructive notice that COGSA's $500 per package liability limitation might apply.

In a well reasoned opinion, the district court rejected these contentions. Although no on-point decisions from this Circuit existed to guide him, Judge Patterson ruled that Stolt, having had at least constructive notice of the liability limitations, was bound both by COGSA and the bills of lading. This appeal followed.

## DISCUSSION

■ Courts of appeals have jurisdiction over appeals from "[i]nterlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3). Absent the stipulation entered into by the parties, it is unclear whether we would have jurisdiction from Judge Patterson's grant of partial summary judgment. *See Bucher–Guyer AG v. M/V Incotrans Spirit*, 868 F.2d 734, 735 (5th Cir.1989) (no jurisdiction existed to review grant of summary judgment applying COGSA's $500 limitation where liability issue had not previously been determined). However, despite the conditional nature of the stipulation, requiring different results depending on our resolution of the liability limitation issue, the orders entered by the district court do "determin[e] the rights and liabilities of the parties." Accordingly, we have jurisdiction under section 1292(a)(3). With that said, we turn to the merits of Stolt's appeal.

Summary judgment is appropriate if the evidence demonstrates that no genuine is-

sue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Our review on appeal is plenary. *See Burtnieks v. City of New York,* 716 F.2d 982, 985 (2d Cir.1983). Because the parties agree on the facts as set forth in the district court's opinion, we concentrate solely on whether the Evergreen defendants were entitled to judgment as a matter of law.

Stolt claims that the liability limitations imposed by COGSA and set forth in the bills of lading should not apply to it because it was not a party to the bills of lading. The district court rejected this argument, as do we.

■ COGSA, the United States' enactment of the Hague Rules, allocates the risk of loss for cargo damaged during international transportation under contracts *evidenced* by bills of lading. *See* 46 U.S.C. app. § 1300; *Nichimen Co. v. M.V. Farland,* 462 F.2d 319, 327 (2d Cir.1972); *see generally* G. Gilmore & C. Black, *The Law of Admiralty* § 3–25, at 145 (2d ed. 1975). Section 4(5) of COGSA limits, "in any event," a carrier's liability for loss or damage to "goods" to $500 per package unless the shipper has declared the nature and the value of the package. 46 U.S.C. app. § 1304(5). Thus, section 4(5) "imposes a default rule. If the shipper does nothing, the carrier's liability is limited to $500 per package. But the shipper can increase this limitation amount simply by declaring a higher value and ensuring that it is inserted in the bill of lading." Sturley, *The Fair Opportunity Requirement Under COGSA Section 4(5): A Case Study in the Misinterpretation of the Carriage of Goods by Sea Act (Part 1),* 19 J.Mar.L. & Com. 1, 4 (1988) (Sturley Part 1). The shipper, of course, would pay an additional amount, the *ad valorem* charge, for the carrier's potential liability. In this Circuit, like most others, the carrier need only have provided notice that a reasonable *ad valorem* charge was available in order to invoke COGSA's liability limitation as a defense. *See General Electric Co. v. MV Nedlloyd,* 817 F.2d 1022, 1028–29 (2d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 661

(1988). Stolt does not argue that it received inadequate notice in this case. Instead, it claims that a bill of lading is insufficient to apply COGSA to a nonparty.

■ COGSA provides that "[e]very bill of lading ... shall have effect subject to the provisions of this chapter." 46 U.S.C. app. § 1300. Stolt would have us read this statutory language as limiting COGSA's liability limitation to the receiver of the bill of lading. However, nothing in this section, nor in section 4(5), limits the reach of COGSA's liability limitation. Rather, once a party issues a bill of lading, goods covered by that bill of lading become subject to section 4(5). A contrary interpretation would defeat COGSA's intended purposes of allocating risk of loss and creating predictable liability rules on which not only carriers but others can rely. *See* Sturley, *The Fair Opportunity Requirement Under COGSA Section 4(5): A Case Study in the Misinterpretation of the Carriage of Goods by Sea Act (Part 2),* 19 J.Mar.L. & Com. 157, 160–61 (1988) (Sturley Part 2). We doubt that bankers, underwriters and subsequent holders could conduct their businesses with confidence if COGSA's liability limitation were to apply only to the actual signatories to bills of lading. Another object of the Hague Rules was to make litigation unnecessary. *Id.* at 161. Clearly, as this case demonstrates, Stolt's proposed interpretation would undermine that goal. If COGSA intended a more narrow limitation of liability, it is doubtful that the statute would have provided that the $500 limitation applied "in any event." 46 U.S.C. app. § 1304(5).

■ If we were to accept Stolt's argument, a carrier, to avoid expanded liability, would have to contract to limit liability not only with the party with whom it actually dealt, but also with all others who might possess an interest in the shipped goods. This would impose "far too heavy a burden on the carriers" and might even "delay shipment, as the carrier attempts to identify and notify parties." *Carman Tool & Abrasives v. Evergreen Lines,* 871 F.2d 897, 900–01 (9th Cir.1989). Such a result would undermine COGSA's purpose. *See*

*id.* at 901. Accordingly, we conclude that where a party is aware that another is shipping its packages aboard a vessel and has at least constructive notice that liability limitations might apply, that party is bound by the liability limitations agreed to by the shipper.

We do not believe that our decision will hobble container owners. They are fully capable of protecting themselves. In this case, Stolt might have contracted directly with Evergreen, which it knew was transporting its containers. Similarly, Stolt might have conditioned Monsanto's use of the containers on Monsanto's (1) declaring the container's value to the carrier, or (2) obtaining insurance or agreeing to compensate Stolt in the case of loss or damage to the container. Finally, Stolt could have protected itself by obtaining its own insurance. Our decision acknowledges the compromise between carriers and cargo interests that resulted in section 4(5). *See* Sturley Part 1 at 3.

▮ Stolt next claims that even if COGSA's liability limitation determines the rights of those who are nonparties to bills of lading, it does not apply in this case because its containers were the functional equivalent of a part of the ship and did not constitute "goods" or "packages." We do not agree.

Although COGSA in section 4(5) limits liability for all goods to $500 per package, it does not inform us whether containers fall within its protection. *See Aluminios Pozuelo Ltd. v. S.S. Navigator,* 407 F.2d 152, 154 (2d Cir.1968).

Stolt directs us to our decision in *Mitsui & Co. Ltd. v. America Export Lines,* 636 F.2d 807 (2d Cir.1981), as support for its argument that section 4(5) does not limit liability for damage to Stolt's containers. *Mitsui,* Stolt insists, supports its contention that a container is to be treated not like cargo but as part of the ship. Stolt misreads our holding in *Mitsui.*

*Mitsui* did not intimate that section 4(5) does not limit liability for damage to containers. Rather, "*Mitsui* held that when a bill of lading discloses on its face what is inside the container, and those contents

may reasonably be considered COGSA packages, then the container is not the COGSA package." *Monica Textile Corp. v. S.S. Tana,* 952 F.2d 636, 639 (2d Cir. 1991) (citations omitted).

Here, Evergreen received five containers holding liquid chemicals that could not have been shipped overseas without some sort of container. The chemicals were not stored in smaller units or drums within each container and cannot "reasonably be considered COGSA packages." Were we to accept Stolt's position, COGSA would not apply at all, as no packages would exist: the containers were a necessary component of the packages of liquid chemical delivered to Evergreen. The common sense definition of the packages delivered to Evergreen included the containers. Moreover, inapplicability in cases such as this would frustrate COGSA's purpose of creating predictable liability for carriers. Therefore, we conclude that each container and its contents constituted a COGSA package.

The parties disagree as to whether bills of lading may impose separate liability limitations, based on the law of contract, apart from COGSA. Because resolution of this issue would not alter our disposition of this case, as COGSA would still limit Evergreen's liability, we need not decide this issue. The parties have raised a number of other issues that do not affect our disposition of this appeal, and we need not address them.

## CONCLUSION

The judgment of the district court is affirmed.